IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN M. FISHMAN, ESQUIRE, ET AL. | : | |
| | : | |
| | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 12-3779 |
| | : | |
| THE HARTFORD | : | |

**SURRICK, J.**                                                                                       **SEPTEMBER \_\_27\_\_, 2013**
<u>**MEMORANDUM**</u>

Presently before the Court is Plaintiffs' Motion for Judgment on the Pleadings (ECF No. 18) and Defendant's Cross-Motion for Judgment on the Pleadings (ECF No. 20). For the following reasons, Defendant's Motion will be granted and Plaintiffs' Motion will be denied.

**I. BACKGROUND**

    **A. Factual Background**

        *1. The Parties*

This action arises out of a dispute over a claims-made professional liability policy. Plaintiffs Brian M. Fishman and David S. Nenner & Associates, P.C. ("Nenner") filed this lawsuit against Defendant Sentinel Insurance Company, Ltd., d/b/a/ "The Hartford." (Compl. ¶¶ 1-4, Notice of Removal Ex. A, ECF No. 1.) Fishman is an attorney with Nenner, a professional corporation licensed to practice law in the Commonwealth of Pennsylvania. (*Id*. at ¶¶ 1-2.) Defendant is a Connecticut corporation engaged in selling legal malpractice insurance. (*Id.* at ¶ 4.)

        *2. Insurance Policy*

On August 24, 2010, Plaintiffs acquired a professional liability policy (the "Policy") from Defendant, which provided insurance coverage for all "claims" made against Plaintiffs during

the policy period of August, 24, 2010 through August 24, 2011. (*Id*. at ¶ 10; Policy, Pls.' Mot. Ex. A, ECF No. 18.) The Policy's coverage agreement states in relevant part:

> **Coverage Agreement**: Subject to the Limits of Liability, the Company shall pay on behalf of the "insured" all sums in excess of the deductible which the "insured" shall become legally obligated to pay as "damages" by reason of any act, or omission, including "claims" arising out of "personal injury", committed or alleged to have been committed prior to the end of the "policy period" and subsequent to the "retroactive date", provided always that:
>
>> 4. As of the effective date of this Coverage Form, no "insured" knew or could have foreseen that such act, error, omission, or "personal injury" could result in a "claim."

(Policy ¶ A.4)

> The Policy defines a "claim" as
>
> notice received by an 'insured' from a person or entity advising that it is the intention of that person or entity to hold the 'insured' liable for 'damages' for an act, error, omission, or 'personal injury' covered under this Coverage Form. 'Claim' includes but is not limited to:
>
>> a. A demand received by an 'insured' for money or services;
>> b. The service of suit or institution or arbitration proceedings; or
>> c. A request received by an 'insured' for a tolling agreement with respect to statutes of limitations or for other extensions to allow the filing or maintenance of 'claims' against the 'insured.'

(*Id*. at ¶ B.1.)

### 3. *Malpractice Claim*

On December 3, 2006, Abdul Murray, an inmate at the Philadelphia House of Corrections ("PHOC"), allegedly sustained serious bodily injuries as a result of being beaten by a corrections officer. (Am. Malpractice Compl. ¶ 8, Compl. Ex. A.) As a result of this incident, Murray was charged with aggravated assault, simple assault, and other charges. Murray ultimately was found not guilty of all charges. (*Id.* at ¶ 15.) At some point in early 2007, Murray contacted Fishman requesting that he represent him in connection with a civil suit against the correctional officer and the PHOC. (May 5, 2009 Disciplinary Ltr. 2, Pls.' Mot. Ex. D.) Between January 25, 2007

2

and December 22, 2008, Murray and Fishman communicated on several occasions via letter about the potential civil suit. (*Id.* at 2-4.) Fishman expressed his interest in representing Murray, but advised him that he did not want to proceed with a civil rights suit with Murray's criminal assault case still pending. (*Id.* at 3.) On August 26, 2008, Murray wrote to Fishman inquiring whether the delay in his assault case would in any way impact the two-year statute of limitations in his civil rights case. (*Id.*) Murray alleges that he received no response to this letter. (*Id.*) Murray wrote to Fishman again on October 7, 2008, requesting that Fishman proceed with the civil rights suit, since the statute of limitations would run in December 2008. (*Id.* at 3-4.) Again, Fishman allegedly failed to respond. (*Id.* at 4.) Finally, on December 22, 2008, Fishman informed Murray that he would not pursue a civil rights case on his behalf, because of the pending assault case. (*Id.*) In addition, he informed Murray that the statute of limitations had run on his civil rights case. (*Id.* at 4.)

On May 5, 2009, Fishman received a letter from the Disciplinary Board of the Supreme Court of Pennsylvania ("Disciplinary Board"), informing him that it was considering disciplinary action because his alleged conduct with respect to Murray's civil rights suit "may have violated the Rules of Professional Conduct." (*Id.* at 1.) On June 18, 2009, the Disciplinary Board completed its inquiry into Murray's complaint, deciding ultimately to dismiss it. (June 18, 2009 Disciplinary Ltr. 1., Pls.' Mot. Ex. F.) However, the Board admonished Fishman that "[a]s a matter of law, [he] had agreed to represent Mr. Murray, if only for a limited purpose," and that he had failed to explicitly communicate with Murray that he represented him "for the sole purpose of investigating the merits of a potential civil rights claim." (*Id.* at 2.) The Disciplinary Board concluded that without such communication, "there could very well have existed a strong inference in Mr. Murray's mind that [Fishman] had agreed to represent him and [was] in fact proceeding to file a civil rights lawsuit on his behalf." (*Id.*) The Board stated that it was

3

apparent from Murray's letter, dated October 7, 2008, that he was under the impression that Fishman was his attorney in connection with the civil rights suit. (*Id.*) Moreover, the Board advised Fishman that it was incumbent upon him to communicate with Murray as to the "potential termination of any representation, limited or unlimited" and to "protect [Murray's] interest in connection with the running of the statute of limitations." (*Id.* at 3.) The Board concluded that "[t]here simply does not exist in [the] file any written correspondence to satisfactorily fulfill [Fishman's] obligations under the Rules of Professional Conduct." (*Id.*) The Board ultimately dismissed the complaint against Fishman, citing as a mitigating factor his lack of a prior disciplinary record. (*Id.*)

On November 24, 2010, following the dismissal of the disciplinary complaint, Murray commenced a legal malpractice suit naming Plaintiffs Fishman and Nenner as defendants. (Compl. ¶ 7.) In his amended complaint, Murray asserts claims against Plaintiffs for breach of contract (Count I) and negligence (Count II), and against the corrections officer for assault and battery (Count III), reckless disregard of safety (Count IV), outrageous conduct causing severe emotional distress (Count V), civil conspiracy (Count VI), and malicious prosecution (Count VII). In Count I, Murray alleges that "[a]s a result of the law firm defendants' breach of contract . . .[Murray]. . . suffered damages and losses including the lost opportunity to purse and recover damages from assault and battery, conspiracy, infliction of emotional distress, reckless disregard for safety and malicious prosecution . . . ." (Am. Mal. Compl. ¶ 39.) Similarly, in Count II Murray alleges that as a result of the law firm's negligence, Murray suffered damages and losses, including the lost opportunity to pursue several claims. (*Id.* at ¶ 44.)

      4.    *Coverage Dispute*

On January 11, 2011, Plaintiffs notified Defendant of Murray's malpractice suit and requested that Defendant enter a defense and indemnify Plaintiffs. (Compl. ¶ 15.) On February

4

2, 2011, Defendant informed Plaintiffs that it would neither defend nor indemnify Plaintiffs in the malpractice suit. (*Id.*) Defendant asserted that Plaintiffs were on notice as early as May 5, 2009, that Murray had filed a disciplinary complaint against Fishman, and thus Plaintiffs could have foreseen that the alleged errors committed in connection with Murray's civil rights suit would result in a malpractice claim. (Feb. 2, 2011 Ltr. 3, Pls.' Mot. Ex. E.)

### B. Procedural History

On May 30, 2012, Plaintiffs brought this action against Defendant in the Philadelphia County Court of Common Pleas. (Notice of Removal ¶ 1.)[1] Plaintiffs seek monetary damages for breach of contract (Count I) and bad faith (Count II) arising out of Defendant's failure to defend and/or indemnify Plaintiffs in the underlying malpractice suit. Plaintiffs also request a declaratory judgment requiring Defendant to defend and indemnify Plaintiffs in the malpractice litigation at issue (Count III).

On July 5, 2012, Defendant removed the matter to this Court. (Notice of Removal.) On July 12, 2012, Defendant filed an answer to the Complaint. (Answer, ECF No. 6.) On January 7, 2013, Plaintiffs filed a Motion for Partial Judgment on the Pleadings. (Pls.' Mot.)[2] Defendant filed a Cross-Motion for Judgment on the Pleadings on February 1, 2013. (Def.'s Cross-Mot., ECF No. 20.) On February 28, 2013, Plaintiffs filed a Response to the Cross-Motion. (Pls.' Resp., ECF No. 22.) Defendant filed a Reply to the response on March 13, 2013. (Reply, ECF No. 25.) Argument on the motions was held on July 10, 2013.

---

[1] Travelers Casualty and Surety Company of America ("Travelers") was originally named as a Defendant in this matter. (Compl. ¶ 4.) On September 6, 2012, Plaintiffs and Travelers stipulated to dismiss the matter against Travelers with prejudice. (ECF No. 13.)

[2] Plaintiffs title their Motion as one for Summary Judgment. In actuality, they move for a partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

5

## II. LEGAL STANDARD

### A. Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A judgment on the pleadings will be granted only if "the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005); *see also Inst. for Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991) ("[A Rule 12(c) motion] only has utility when all the material allegations of fact are admitted in the pleadings and only questions of law remain.")(quotation marks and citations omitted).

In evaluating a Rule 12(c) motion, the Court must "accept the complaint's well-pleaded allegations as true, and construe the complaint in the light most favorable to the nonmoving party, but will not accept unsupported conclusory statements." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262-63 (3d Cir. 2008). The Court may consider "matters of public record, and authentic documents upon which the complaint is based if attached to the complaint or as an exhibit to the motion." *Chemi SpA v. GlaxoSmithKline*, 356 F. Supp. 2d 495, 496-97 (E.D. Pa. 2005) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1391 (3d Cir. 1994)).

## B. Review of Insurance Policies[3]

The task of construing an insurance policy is performed by the Court, rather than by a jury. *401 Fourth St., Inc., v. Investors Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005). The Court must "ascertain the intent of the parties as manifested by the terms used in the written insurance policy." *Id.* at 170. If the terms of the policy are clear and unambiguous, then the court must give effect to the terms plain and ordinary meaning. *Std. Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983).

An insurer has a duty to defend "when a claim against the insured is potentially covered by the insurance policy." *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr.*, 2 A.3d 526, 533 (Pa. 2010). "An insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy." *Penn-Am. Ins. Co. v. Peccadillos, Inc.*, 27 A.3d 259, 265 (Pa. Super. Ct. 2011) (quoting *Jerry's Sport Ctr.*, 2 A.3d at 541). If any claims are potentially covered by the terms of the policy, the insurer has a duty to defend, even if some of the claims were excluded from coverage. *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 948 A.2d 834, 846 (Pa. Super. Ct. 2008) ("[I]f there are multiple causes of action and one would potentially constitute a claim within the scope of the policy's coverage,

---

[3] Where jurisdiction is based on diversity, the court must apply the substantive choice-of-law rules of the forum state. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007). Accordingly, Pennsylvania's choice-of-law rules apply. Here, neither party has explicitly addressed the choice-of-law issue, but both parties rely on Pennsylvania law in their submissions, implicitly agreeing that Pennsylvania law should govern this dispute. *See Assicurazoni Generali, S.P.A. v. Clover*, 195 F.3d 161, 164 (3d Cir. 1999) ("Both Pennsylvania law and the Restatement of Conflict of Laws provide that the first question to be answered in addressing a potential conflict of laws dispute is whether the parties explicitly or implicitly have chosen the relevant law.)

the insurer would have a duty to defend until it could confine the claim to a recovery excluded from the policy.")

It is a well-settled principle that an insurer's duty to defend is broader than an insurer's duty to indemnify. *Id*. at 846. An insurer has a duty to indemnify only if it has been determined that the insured is "liable for damages within the coverage of the policy." *Regis Ins. Co. v. All Am. Rathskeller, Inc.,* 976 A.2d 1157, 1161 (Pa. 2009) (quoting *Britamco Underwriters, Inc. v. Stokes*, 881 F. Supp. 196, 198 (E.D. Pa. 1995)).

Under Pennsylvania law, the insured party has the burden of establishing coverage under an insurance policy. *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206 (3d Cir. 2001) (citing *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1366-67 (1987)). However, the insurer bears the burden of proving the applicability of any exclusions or limitations on coverage. *Koppers Co., Inc. v. Aetna Cas. & Sur. Co*., 98 F.3d 1440, 1446 (3d Cir. 1996). The Court must construe policy exclusions strictly against the insurer. *See First Pa. Bank, N.A. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 580 A.2d 799, 802 (Pa. Super. Ct. 1990).

## III. DISCUSSION

The parties dispute centers on whether or not the prior knowledge provision of the policy precludes coverage of the malpractice suit. Defendant maintains that Plaintiffs were aware of the missed statute of limitations deadline, and could have foreseen the malpractice lawsuit filed by Murray. Plaintiffs counter that the suit was not foreseeable because it included claims beyond those addressed by the disciplinary board. Moreover, Plaintiffs argue that the prior knowledge provision violates public policy.

### A. Prior Knowledge Provision

The prior knowledge provision of the Policy precludes coverage if the insured, as of August 24, 2010, the effective date of the Policy, "knew or could have foreseen that [an] act, error, omission, or 'personal injury' could result in a 'claim.'" (Policy ¶ A.4.) Here, Defendant maintains that the "act, error, [or] omission" was the failure by Fishman to file a civil rights suit on behalf of Murray prior to the expiration of the statute of limitations. Defendant argues that as a result of the disciplinary complaint, Fishman should have foreseen that his failure to file a civil rights suit would lead to a malpractice claim. Plaintiffs argue that the malpractice suit was not foreseeable because the allegations set forth in the malpractice suit are broader than those addressed by the disciplinary proceeding.

The Third Circuit in *Selko v. Home Ins. Co.*, 139 F.3d 146, 151 (3d Cir. 1998), established a mixed subjective/objective standard for determining what constitutes prior knowledge of a possible insurance claim. The court held that "[f]irst, it must be shown that the insured knew of certain facts. Second, . . . it must be determined that a reasonable lawyer in possession of such facts would have had a basis to believe that the insured had breached a professional duty." *Id.* at 152. The *Selko* standard has been applied to similar exclusionary provisions by a number of courts in the Third Circuit. *See e.g., Pelagatti v. Minn. Lawyers Mut. Ins. Co.*, No. 11-7336, 2013 WL 3213796, *6 (E.D. Pa. June 25, 2013) (applying the *Selko* test to determine if the plaintiff was aware of any act, error, or omission which could reasonably support or lead to a demand for damages); *Coregis Ins. Co. v. Wheeler*, 24 F. Supp. 2d 475, 479 (E.D. Pa. 1998) ("Although the *Selko* Court interpreted an exclusionary provision containing different language, its analysis and reasoning is applicable to this case."); *see also Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302, 306 (3d Cir. 2001) ("Although the exclusionary provision interpreted in *Selko* differed in language from the one before us, our holding in that

9

case is applicable here insofar as it instructs us first to consider the subjective knowledge of the insured and then the objective understanding of a reasonable attorney with that knowledge.").

Applying the *Selko* test to this case, we must first consider the subjective knowledge of the insured as of August 25, 2010, the effective date of the policy. It is undisputed that Fishman was aware that, as early as December 22, 2008, the statute of limitations had expired on Murray's claim. On December 22, 2008, Fishman indicated in a letter to Murray that he would not be pursuing a civil rights action on his behalf. Fishman also acknowledged that the statute of limitations had run in Murray's civil rights case. Furthermore, it is undisputed that Fishman was aware, as of May 5, 2009—the date he received the Disciplinary Board's letter—that Murray had initiated a disciplinary proceeding. He knew that the basis of the complaint was the failure to file a civil rights suit prior to the expiration of the statute of limitations. It is clear that Fishman subjectively knew that he had missed the statute of limitations deadline, and that Murray was dissatisfied with Fishman's handling of his case.

There can be no doubt that a reasonable attorney in possession of these facts could have foreseen that a claim might be brought against him.[4] A reasonable attorney could foresee that failure to file a claim prior to the running of the statute of limitations would be the basis for a subsequent malpractice suit against him. *Pelagatti*, 2013 WL 3213796, at * 7 ("A reasonable attorney would believe that failure to comply with a statute of limitations could be grounds for a legal malpractice claim."); *Wheeler*, 24 F. Supp. 2d at 479 (concluding that a reasonable attorney

---

[4] In fact, a reasonable attorney would have known that a civil rights action could have been filed before the running of the statute of limitations thus protecting all of Murray's § 1983 claims. Then, a reasonably attorney would have stayed the civil rights action, pending the outcome of the criminal charges against Murray. *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (noting that when a plaintiff files a false arrest/false imprisonment claim prior to disposition of charges against him, "it is within the power of the district court, and in accordance with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended").

could have foreseen a malpractice claim based on failure to add a claim prior to the expiration of the statute of limitations). Moreover, a reasonable attorney could foresee that an individual who initiates a disciplinary proceeding against him based on the alleged breach of several professional duties may later pursue a malpractice suit. *See Barratta*, 264 F.3d at 307 ("When an attorney has a basis to believe he has breached a professional duty, he has a reason to foresee that his conduct might be the basis of a professional liability claim against him.").

Plaintiffs focus their argument on the fact that Murray's breach of contract and negligence claims include allegations that Plaintiffs failed to pursue a malicious prosecution claim and a conspiracy claim on behalf of Murray. Plaintiffs argue that these causes of action are unrelated to the statute of limitations issue addressed by the disciplinary proceeding, and therefore they could not have foreseen the subsequent malpractice complaint. (Pls.' Mot. 13.) Further, Plaintiffs maintain that the statute of limitations had not yet run on the conspiracy or malicious prosecution claims and therefore the Disciplinary Board complaint could not have served as notice of any "act, error, omission or personal injury with respect to [those] alleged cause[s] of action, because on May 5, 2009 such causes of action were not yet ripe." (*Id.* at 13.)

We reject Plaintiffs' arguments. Examining the unambiguous terms of the Policy, it is clear that the insured need only know or foresee that an act, error, or omission could result in "*a* claim." The provision does not require that the insured have the ability to foresee with specificity the precise contours of the resulting malpractice complaint. In any event, a reasonable attorney in Fishman's position could have foreseen a malpractice complaint based on a failure to pursue malicious prosecution and conspiracy claims. Fishman was familiar with the facts of Murray's case, and was aware of the pending assault case against him, which is the basis for the malicious prosecution cause of action. While one aspect of the disciplinary complaint was the failure to file a civil rights suit prior to the expiration of the statute of limitations, the

11

Disciplinary Board generally admonished Fishman for failing to adequately advise Murray regarding the alleged limited nature of his representation and the termination of his limited representation. The disciplinary proceedings should have put Fishman on notice that Murray would pursue a malpractice action based on any and all causes of action that Plaintiffs failed to pursue. We are compelled to conclude that Plaintiffs were aware of an act, error, or omission which they could have foreseen would result in a claim. Accordingly, Defendant has no duty to defend or to indemnify Plaintiffs in the underlying malpractice lawsuit.[5]

### B. Public Policy

Plaintiffs also contend that the prior knowledge provision at issue is contrary to "public policy." They argue that the provision at issue (1) does not meet the standard set forth in *Brakeman v. Potomac Insurance Co.*, 371 A.2d 193 (Pa. 1977) and (2) provides illusory coverage by omitting the word "reasonably," thereby creating a "could be foreseen" test heavily weighted towards exclusion. (Pls.' Mot. 21-25.)

In *Brakeman* the Supreme Court of Pennsylvania held that:

> [W]here an insurance company seeks to be relieved of its obligations under a liability insurance policy on the ground of late notice, the insurance company will be required to prove that the notice provision was in fact breached and that the breach resulted in prejudice to its position.

*Brakeman*, 371 A.2d at 198. However, it is well settled that the notice-prejudice rule established in *Brakeman* does not extend to claims-made policies. *See ACE Am. Ins. Co. v. Underwriters at Lloyds & Cos.*, 939 A.2d 935, 940-41 (Pa. Super. Ct. 2007) (citing *Pizzini v. Am. Int'l Special Lines Ins. Co.*, 210 F. Supp. 2d 658, 669-70 (E.D. Pa. 2002) ("Under Pennsylvania law the

---

[5] Plaintiffs also bring a cause of action for bad faith, claiming that Defendant "willfully, intentionally and callously and without just cause or reason failed to either defend or indemnify plaintiffs in the underlying action thus acting with bad faith and callous disregard for the rights of plaintiffs . . . ." (Compl. ¶ 25.) Because we have concluded that Defendant has not breached its duty to defend or indemnify, Plaintiffs' claim for bad faith must fail.

12

*Brakeman* 'notice-prejudice' rule does not apply to 'claims made policies.' Thus, an insurer providing liability coverage under a 'claims made' policy need not show it was prejudiced by an insured's failure to provide timely notice of a claim in order to deny coverage on that ground."); *see also Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 327 n.5 (3d Cir. 2005) ("We are persuaded that the Pennsylvania Supreme Court would not extend the *Brakeman* rule to claims-made policies because such an extension of the notice period would defy the very purpose of a claims-made policy—that the claim be reported during the policy period."); *Ehrgood v. Coregis Ins. Co.*, 59 F.Supp.2d 438, 444 (M.D. Pa. 1998) ("[T]his court finds that enforceability of the prior knowledge exclusion in a claims-made policy does not depend on whether the insurer was prejudiced by the insured's untimely notice of a potential claim.").

In an attempt to circumvent this limitation, Plaintiffs characterize the Policy as "occurrence coverage" or "coverage arising from events that occurred in a prior specified period." (Def.'s Mot. 24.)[6] This contention wholly ignores the unambiguous text of the Policy. The title of the Policy is "Lawyers Professional Liability Coverage Form (Claims Made)." In addition, the declaration page of the Policy states that "[t]his is claims made insurance." Clearly, the Policy at issue provides claims-made insurance coverage, and therefore *Brakeman* does not

---

[6] The court in *City of Harrisburg v. International Surplus Insurance Co.* explained the difference between the claims-made and occurrence coverage polices as follows:

> [T]he occurrence policy, keys upon when that conduct occurs. If it occurs during the policy period, the insurer has a duty to indemnify and defend the insured regardless of when that claim against the insured is made. Conversely, the other type of policy, the claims-made policy, keys upon when the claim is asserted against the insured. If it is made against the insured during the policy period, the insurer has to perform under the contract regardless of when the conduct giving rise to the claim occurred.

596 F. Supp. 954, 960 (M.D. Pa. 1984).

apply. Accordingly, Defendant need not demonstrate prejudice in order to deny coverage under the Policy.

Plaintiffs further argue that the omission of the word "reasonably" from the prior knowledge provision is contrary to public policy because it enables an "unlimited exclusion of virtually any claim . . . even if not reasonably foreseeable on the effective date of the policy." (Pls.' Mot. 24.) As Defendant correctly observes, prior knowledge provisions, similar to the one at issue in this Policy, have routinely been upheld. *Abood v. Gulf Grp. Lloyds*, No. 07-299, 2008 WL 2641310, at *8 (W.D. Pa. July 1, 2008) ("Pennsylvania courts have long upheld language in insurance policies that excludes coverage when, before the inception of the insurance contract, an insured had prior knowledge of an otherwise recoverable circumstance."). It is worth noting that the prior knowledge provision at issue in the seminal *Selko* decision did not include the word reasonably. *See Selko*, 139 F.3d at 149 (upholding prior knowledge provision which provided coverage for acts, errors, or omissions so long as the "Insured had no basis to believe that the Insured had breached a professional duty"); *see also Ehrgood*, 59 F. Supp. 2d at 442-44 (upholding prior knowledge provision which denied coverage if the insured "knew or could foreseen that [an] act, error, omission, or personal injury might be expected to be the basis of a claim"). Here, despite the absence of the word reasonably in the prior knowledge provision, the *Selko* test demands that the court consider what a "reasonable attorney" could have foreseen. We will not strike down the language in this provision merely because it omits the word reasonably.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion will be granted and Plaintiffs' Motion will be denied.

An appropriate Order follows.

BY THE COURT:

_____
**R. BARCLAY SURRICK, J.**